IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WILLIAM FRANCIS PHIPPS** | * |
| | * |
| v. | *   Civil Case No. WDQ-14-0684 |
| | * |
| **COMMISSIONER, SOCIAL SECURITY** | * |
| | * |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions. ECF Nos. 10, 12. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that both motions be denied and that the case be remanded to the Commissioner for further consideration in accordance with this report.

Mr. Phipps applied for Disability Insurance Benefits on December 16, 2010, alleging a disability onset date of November 1, 2009. (Tr. 146-48). His claim was denied initially on February 17, 2011, and on reconsideration on August 15, 2011. (Tr. 77-80, 88-90). An Administrative Law Judge ("ALJ") held a hearing on October 25, 2012, (Tr. 39-64), and subsequently denied benefits to Mr. Phipps in a written opinion, (Tr. 21-33). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Phipps suffered from the severe impairments of obesity,

osteoarthritis in his left knee, and lumbar degenerative disc disease. (Tr. 26). However, the ALJ determined that Mr. Phipps retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except all posturals are occasional, but no climbing of a ladder, rope, or scaffold; and should avoid concentrated exposure to temperature extremes and vibrations, odors, dust, and poor ventilation.

(Tr. 29). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Phipps could perform work existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 32-33).

Mr. Phipps disagrees. He asserts several arguments in support of his appeal: (1) that the ALJ failed to give sufficient weight to the opinions of his treating rheumatologist, Dr. Rocca; (2) that the ALJ erred by finding Mr. Phipps's mental impairments to be non-severe; (3) that the Appeals Council failed to consider new and material evidence; and (4) that the ALJ erred in making an adverse credibility assessment. I concur that the ALJ's analysis of Dr. Rocca's opinions was deficient, and I therefore recommend remand. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Phipps was not entitled to benefits is correct or incorrect.

As background, Mr. Phipps worked as a pipefitter and warehouse worker for over 33 years before he retired due to knee and back pain in 2009. (Tr. 45-47). At the time of the hearing, Mr. Phipps was 5'6" and weighed approximately 311 pounds. (Tr. 44). Dr. Rocca, a rheumatologist, treated Mr. Phipps twice per year for more than eleven years. (Tr. 427). On May 6, 2011, Dr. Rocca drafted a narrative opinion in which he stated that Mr. Phipps was suffering from "chronic but manageable pain in his back, right hip, and knees." (Tr. 407). Dr. Rocca noted that Mr. Phipps was taking four pills of hydrocodone/APAP per day to manage the pain. *Id.* On March 6, 2012, Dr. Rocca completed a comprehensive arthritis questionnaire on Mr. Phipps's behalf, which appears to contain a reasoned assessment of Mr. Phipps's functional

capacity. (Tr. 427-34). For example, Dr. Rocca conceded that Mr. Phipps was capable of initiating and sustaining ambulation, initiating and sustaining fine and gross movements, could occasionally lift and carry items weighing up to 20 pounds, and had no limitations in grasping, using fingers/hands, and using arms for reaching. (Tr. 429, 431). Dr. Rocca further conceded that Mr. Phipps could sit for eight hours in an eight hour day, but would have to get up and move around in variable intervals. (Tr. 430). However, Dr. Rocca stated that Mr. Phipps could only stand or walk for less than one hour in an eight hour day. *Id.* Dr. Rocca again reiterated that Mr. Phipps experienced side effects from his pain medication, and that his symptoms would frequently interfere with attention and concentration. (Tr. 431-32). Finally, Dr. Rocca opined that Mr. Phipps would be absent from work more than three times per month as a result of his impairments. (Tr. 433). Dr. Rocca noted the positive clinical findings supporting his opinion, including a limited range of motion in both knees, joint tenderness in both knees, joint warmth in both knees, joint deformity in both knees, muscle spasms in the lumbar area, and muscle weakness and atrophy in both quads. (Tr. 427-28).

The ALJ assigned little weight to Dr. Rocca's opinions, noting that in the 2011 opinion, "it is unclear whether Dr. Rocca intended to limit the claimant from all work or only past relevant work." (Tr. 31). With respect to the more detailed 2012 opinion, the ALJ alleged that Dr. Rocca's opinion was "reserved to the Commissioner and is not a medical opinion under the regulations." *Id.* Moreover, the ALJ asserted that Dr. Rocca's opinion "is inconsistent with more recent treatment records indicating significant back pain relief from injections and anticipated left knee surgery with a minimal recovery period." *Id.*

In light of all of the evidence of record, the ALJ was required to provide more explanation about the detailed opinions in Dr. Rocca's report, particularly on the issues that were medical in nature and not an overall determination of whether or not Mr. Phipps could sustain

employment. For example, Dr. Rocca clearly opined that, while Mr. Phipps could sit for up to eight hours in a workday, he could only stand or walk for very limited periods. (Tr. 430). That opinion is entirely consistent with Mr. Phipps's own testimony that he cannot stand for a full hour, but has no limitations in his ability to sit. (Tr. 54). The ability to sit, stand, and walk for prolonged periods is critical to an assessment of whether Mr. Phipps's RFC assessment properly found him capable of light work, as determined by the ALJ, or should have limited him to sedentary work.[1] See SSR 83–10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) (providing that sedentary work requires standing or walking that would "total no more than about 2 hours of an 8–hour workday" but that a job is categorized as "light work" when "it requires a good deal of walking or standing."). The ALJ did not discuss Mr. Phipps's ability to stand or walk for prolonged periods, and did not place any limitation on the duration of standing or walking in the RFC assessment. Without that analysis, I cannot determine whether the ALJ's conclusion was supported by substantial evidence. The only evidence cited by the ALJ is a single treatment note that Mr. Phipps had experienced recent improvement in his back pain (which Mr. Phipps testified only lasted for about one month) and the fact of his upcoming knee surgery, with speculative results. That evidence is insufficiently substantial to establish Mr. Phipps's ability to perform the standing and walking requirements of light work.[2]

The ALJ also did not address Dr. Rocca's contentions about the side effects from Mr.

---

[1] The distinction is especially significant in Mr. Phipps's case because, due to his age, if he were capable only of sedentary work, he would be "disabled" under the Medical-Vocational Rules. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.21. The ALJ did not seem to appreciate the distinction, since she cited both representative light and sedentary jobs while concluding that Mr. Phipps was not disabled. (Tr. 33).

[2] Additionally, I note that one of the state agency medical consultants determined in August of 2011 that Mr. Phipps could perform "light work," describing "allegations of back and neck strain due to OA, also claims to have RA, but he is not on any medications, only takes some OTC pain meds as needed." (Tr. 413). However, medical records from earlier in 2011 clearly indicate significant left knee pain and a prescription for Vicodin in 2010, continuing into 2011. (Tr. 399-401). Moreover, that reviewing physician apparently saw Dr. Rocca's letter, which referred to Mr. Phipps's regular consumption of hydrocodone, but did not address that fact. (Tr. 407, 415).

Phipps's medications. I recognize that the record appears to contain a suggestion that Mr. Phipps eventually stopped using pain medication, at least for his back, and that, at the hearing, Mr. Phipps testified that he did not experience significant side effects from his medication. (Tr. 54). Nevertheless, given Dr. Rocca's opinion that medication side effects would preclude employment, the ALJ should address the issue of whether Mr. Phipps experiences any impairment, or no impairment, from medication side effects.

Mr. Phipps raises several other arguments in support of his appeal. While those arguments might not, standing alone, warrant remand of the case, in light of the recommended remand, I further recommend that the ALJ provide a more complete analysis of Mr. Phipps's mental health impairment, including the allegation of a suicide attempt/hospitalization in December 2011[3] and the report from a consultative psychological examiner, Dr. Simon, dated December 4, 2013. Finally, on remand, the ALJ should expressly consider, as part of the credibility analysis, Mr. Phipps's long history of employment prior to his claim of disability.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 12);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 10);

3. the Court REMAND the case to the Commissioner for further proceedings and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

---

[3] The ALJ made no reference to the alleged suicide attempt and resulting treatment, and in fact stated that, "The claimant did not seek mental health treatment until June of 2012." (Tr. 27). There are no records from a hospitalization in December 2011 in Mr. Phipps's claim file.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  October 30, 2014                                       /s/                          
                                                                           Stephanie A. Gallagher
                                                                           United States Magistrate Judge